# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**REBECCA STILTNER,**
**Claimant Below, Petitioner**

**FILED**

January 25, 2018
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 17-0751** (BOR Appeal No. 2051839)
                    (Claim No. 2015015785)

**BLUEFIELD REGIONAL MEDICAL CENTER,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rebecca Stiltner, by Gregory S. Prudich, her attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Bluefield Regional Medical Center, by Mark J. Grigoraci, its attorney, filed a timely response.

The issue on appeal is Ms. Stiltner's entitlement to permanent partial disability. The claims administrator granted a 0% permanent partial disability award on March 30, 2015. The Office of Judges affirmed the decision in its February 27, 2017, Order. The Order was affirmed by the Board of Review on July 27, 2017. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Stiltner, a registered nurse, was injured in the course of her employment on August 28, 2014, when she lost her balance and put her right foot down hard to keep herself from falling. A right foot x-ray taken on September 12, 2014, showed a small planar calcaneal spur. There was no fracture or dislocation. Ms. Stiltner was treated for the injury by Mark Wilt, M.D., on September 12, 2014, at which point he diagnosed right foot tendonitis. On November 9, 2014, Ms. Stiltner reported that her right foot pain was worsening. Dr. Wilt noted that she had sustained an injury to her right foot in August that caused pain and swelling. On December 5, 2014, Dr. Wilt recommended she remain off of work and continue to use a walker. On January 23, 2015, Ms. Stiltner was weight bearing with supportive shoes. She appeared to be improving

1

but she reported swelling in her noncompensable left foot. Dr. Wilt put her in a walking boot for the left foot until an MRI could be completed. On March 26, 2015, Ms. Stiltner reported that her pain was gradually improving.

An MRI of the right foot showed a second metatarsal stress fracture on November 10, 2014. Ms. Stiltner completed a report of occupational injury on December 5, 2014, alleging that she injured her right foot on August 28, 2014. Dr. Wilt completed the physician's section and diagnosed a second metatarsal fracture of the right foot. Ms. Stiltner was taken off of work until January 18, 2015. The claim was held compensable for second metatarsal fracture of the right foot on December 11, 2014.

Robert Kropac, M.D., performed an independent medical evaluation on March 24, 2015, in which he found that Ms. Stiltner had reached maximum medical improvement. He diagnosed healed stress fracture of the second metatarsal of the right foot. He concluded that the left foot and knee symptoms were not related to the compensable right foot injury. Dr. Kropac determined that Ms. Stiltner could return to full duty work with no restrictions in regard to the right foot injury. Using the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993), he assessed 0% permanent partial disability. Based on his report, the claims administrator granted Ms. Stiltner a 0% permanent partial disability award on March 30, 2015. On June 14, 2015, Mohammed Ranavaya, M.D., reviewed Ms. Stiltner's medical records and concurred with Dr. Kropac's recommendation of 0% permanent partial disability for the right foot.

Bruce Guberman, M.D., performed an independent medical evaluation on December 16, 2015, in which he found that Ms. Stiltner had reached maximum medical improvement. He diagnosed history of stress fracture of the second right metatarsal, history of stress fracture of the left foot, and chronic post-traumatic left knee strain. Dr. Guberman concluded that the left foot and left knee problems were related to stress and the abnormal biodynamics attributable to the compensable right foot injury; therefore, the left knee and foot problems are related to the compensable injury. Using the American Medical Association's *Guides,* he found 8% impairment for range of motion abnormalities in the left ankle. For the right foot he found 3% impairment for extension range of motion abnormalities. His total assessment was 11% whole person impairment for both feet.

Ms. Stiltner testified in a deposition on December 18, 2015, that she was removing a shoe cover when she lost her balance. She put her right foot down to keep from falling and felt a snap followed by pain. Dr. Wilt diagnosed a stress fracture and put her in a CAM boot. She was off of work from November 12, 2014, until the following August. She stated that Dr. Wilt also subsequently diagnosed a stress fracture in her noncompensable left foot. Ms. Stiltner was unaware of an injury to her left foot. She stated that two weeks after she was put in a CAM boot on her left foot, she began experiencing intense pain and swelling in the left knee.

Dr. Kropac testified in a deposition on March 8, 2016, that he is an orthopedic surgeon and had performed an evaluation of Ms. Stiltner's right foot. He found the fracture was well healed. He stated that he only evaluated the right foot but speculated that the left foot and left

knee injury was unrelated to the compensable right foot fracture as no mention was made of a left foot injury at that time. On cross-examination, Dr. Kropac admitted that a stress fracture would alter someone's gait but disagreed that it would put greater stress on the opposite side of the body. He explained that one only overuses one side of the body over another if they are using a cane or similar device.

Dr. Guberman testified in a deposition on May 15, 2016, that Ms. Stiltner's left knee problems developed due to the difference in her gait as a result of the compensable injury. He stated that wearing a CAM boot on the left foot for two weeks could cause excruciating left knee pain. He agreed that Ms. Stiltner did not sustain an acute left knee injury, but he opined that her symptoms were related to accumulated trauma due to gait abnormalities caused by the compensable right foot stress fracture.

On June 23, 2016, Prasadarao Mukkamala, M.D., performed an independent medical evaluation in which he opined that the left foot and left knee problems were not causally related to the compensable injury. He determined that Ms. Stiltner had reached maximum medical improvement. Using the American Medical Association's *Guides*, he assessed 0% impairment.

Ms. Stiltner testified in a deposition on November 4, 2016, that she had experienced problems with her left foot and left knee following her compensable right foot fracture. She stated that prolonged standing or walking caused right foot tightness, swelling, aching, and pain. The symptoms were aggravated by walking. She stated that she used to be active but was now unable to exercise due to foot pain. She testified that Dr. Guberman seemed to have given her a more thorough examination as he took more measurements and asked her questions about her use of ibuprofen for the right foot. Ms. Stiltner asserted that Dr. Mukkamala did not take as many measurements and did not inquire about her pain management. She stated that she could not do the kind of nursing job that requires being on her feet all day. She admitted that no doctor had given her any work restrictions.

The Office of Judges affirmed the claims administrator's grant of a 0% permanent partial disability award on February 27, 2017. It first found that though Ms. Stiltner asserts that her left lower extremity should also be included as part of the compensable injury, no evidence has been introduced indicating that the left lower extremity conditions have been added to the claim. Therefore, only the right lower extremity condition was addressed. The Office of Judges next determined that the only evaluator of record to find impairment of the right foot was Dr. Guberman who found 3% impairment based on Table 42 of the American Medical Association's *Guides*. The Office of Judges found that his range of motion measurements were difficult to follow. Table 42 of the American Medical Association's *Guides* refers to plantar flexion, flexion contracture, and extension. Dr. Guberman found thirty-five degrees plantar flexion with the right knee fully extended and thirty-five degrees plantar flexion with the knee flexed to forty-five degrees. He also found eight degrees dorsiflexion with the knee fully extended, five degrees dorsiflexion with the knee flexed to forty-five degrees, thirty degrees inversion, and twenty degrees eversion. The Office of Judges stated that the significance of the flexion at thirty-five degrees with the right knee flexed as opposed to fully extended was unknown; however, Ms. Stiltner's flexion capability exceeded twenty degrees either way. The Office of Judges then

3

determined that the range of motion studies done by Drs. Kropac and Mukkamala do not corroborate Dr. Guberman's findings that Ms. Stiltner had limited range of motion with extension or plantar flexion of the right ankle. Therefore, the Office of Judges concluded that Dr. Guberman's report was uncorroborated regarding his objective findings and that a preponderance of the evidence indicated Ms. Stiltner sustained no permanent impairment as a result of the compensable injury. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on July 27, 2017.

After review, we agree with the conclusions of the Board of Review. On appeal, Ms. Stiltner argues that Dr. Kropac's report is unreliable because he failed to include his specific range of motion measurements and instead only noted that they were normal. Even discounting his report, a preponderance of the evidence still indicates Ms. Stiltner sustained no permanent impairment as a result of her compensable injury. Dr. Mukkamala provided a reliable report concluding that she sustained 0% impairment and no evidence has been shown that the Board of Review committed a reversible error.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: January 25, 2018**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Elizabeth D. Walker

**DISSENTING:**
Justice Menis E. Ketchum